# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

### NO.: 23-2048

_____

### UNITED STATES,

### Appellee,

### v.

### ABDULLAHI ISSAK,

### Defendant - Appellant.

_____

## APPEAL FROM THE UNITED STATES
## DISTRICT COURT FOR THE DISTRICT
## OF MAINE
## (CASE NO.: 1:22-CR-135-JAW)

_____

## INITIAL BRIEF OF APPELLANT
## FILED PURSUANT TO _Anders vs. State of California_, 386 U.S. 738 (1967)

_____

**PHILIP R. HOROWITZ, ESQUIRE**
**Court Appointed Attorney for**
**Appellant ISSAK**
**7700 North Kendall Drive**
**Suite #604**
**Miami, Florida 33156**
**Tel.: (305) 670-1915**

**E-Mail: _HorowitzDefense@aol.com_**

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant feels that oral argument would be not be helpful and the decisional process would not be significantly aided by its allowance.  This request is made pursuant to Fed R. App. P. 34(c) and 1st Cir. R. 34.0(a)


## CERTIFICATE OF COMPLIANCE

The Appellant certifies that 14-point Times New Roman font is used in this brief and pursuant to Fed. R. App. P. 32 (a)(6) and (7) this brief contains 6,670 words.

TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  i

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT

     ISSUE I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>TABLE OF CITATIONS</u>

<u>CASES</u>

*Gall vs. United States*

128 S. Ct. 586 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*United States v. Ahmed*

51 F.4th 12 (1st Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bermúdez-Meléndez*

827 F.3d 160 (1st Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States vs. Booker*

125 S. Ct. 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Clogston*

662 F.3d 588 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*United States v. Colón-De Jesús*

85 F.4th 15 (1st Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Contreras-Delgado*

913 F.3d 232 (1st Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Flores-Quiñones*

985 F.3d 128 (1st Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. González*

857 F.3d 46 (1st Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Griffin*

187 Fed. Appx. 13 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Jimenez-Beltre*, 440 F.3d 514 (1ˢᵗ Cir. 2006)

440 F.3d 514 (1ˢᵗ Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. King*

741 F.3d 305 (1ˢᵗ Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Lee*

892 F.3d 488 (1ˢᵗ Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Millán-Machuca*

991 F.3d 7 (1ˢᵗ Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Millán-Machuca*

991 F.3d 7 (1ˢᵗ Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Mills*

710 F.3d 5 (1st Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Nygren*

933 F.3d 76 (1ˢᵗ Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Quirion*

714 F.3d 77 (1ˢᵗ Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Ramirez-Ayala*

2024 WL 2074684 (1ˢᵗ Cir. May 9, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Reyes-Torres*

979 F.3d 1 (1ˢᵗ Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*United States v. Rivera-Ruiz*

43 F.4th 172 (1ˢᵗ Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Rondón-García*

886 F.3d 14 (1ˢᵗ Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*United States v. Ruiz-Huertas*

792 F.3d 223 (1ˢᵗ Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*United States v. Santiago Rivera*

744 F.3d 229 (1ˢᵗ Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*United States v. Sayer*

916 F.3d 32 (1ˢᵗ Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*United States v. Torres-Landrúa*

783 F.3d 11 (1ˢᵗ Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*United States v. Vargas–Dávila*

649 F.3d 129 (1ˢᵗ  Cir.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*United States v. Zapata-Vázquez*

778 F.3d 21 (1ˢᵗ Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

STATUTES

18 U.S.C. §371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. §922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. §924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. §3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

18 U.S.C. §3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 20, 24

18 U.S.C. §3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

U.S.S.G. §3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 15, 16, 17

U.S.S.G. §5G1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

RULES OF PROCEDURE

FRAP 32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

FRAP 34(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

1st Cir. Rule 34.0 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. Crim. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

<u>PRELIMINARY STATEMENT</u>

The Appellant, ABDULLAHI ISSAK, was the Defendant below and will be so referred to in this brief when his actual name is not used.  The United States of America, Appellee, will be referred to as the "government."  Since the final certificate of readiness has not been prepared by the District Court, in the spirit of uniformity, the docket entries for the underlying district court case will be referred to as "DE."

<u>STATEMENT OF JURISDICTION</u>

Jurisdiction for this appeal arises from the final judgment in a criminal case, entered against Appellant Abdullahi Issak on November 29, 2023 in the United States District Court for the District of Maine. (DE #65). Jurisdiction in the District Court was based upon Title 18, United States Code, Section 3231, because the government prosecuted him for violations of the United States Code.

Pursuant to Title 28, United States Code, Section 1291, Mr. Issak requested that the United States Court of Appeals for the First Circuit review the District Court's final decision regarding his conviction and sentencing by timely filing the Notice of Appeal on December 6, 2023. Jurisdiction over the appeal  is predicated upon 18 U.S.C. §3742. (DE #73)

STATEMENT OF THE CASE

On August 1, 2022, the government filed a sealed criminal complaint against the defendant in Bangor, Maine which generally charged him with numerous violations of federal law including firearms related offenses. On August 5, 2022, the defendant appeared before United States Magistrate Judge Karen Frink Wolf for his initial appearance. (DE #8) The defendant was appointed counsel, detained pending trial, and the court found probable cause. (DE #8, 12)

On November 4, 2022, the government filed a two-count information against the defendant. (DE #22) The information charged two violations of federal law. In Count 1 Mr. Issak was charged within the District of Maine specifically Franklin County, on or about December 24, 2021 with possession of a firearm by a convicted felon in violation of 18 U. S. C. §922(g) and §924(a)(2). This defendant was also charged in Count 2 with from an unknown date but not later that about December 20, 2021 continuing to a date not earlier than December 30, 2021 and from an unknown date but not later that about May 19, 2022 continuing to a date not earlier than July 19, 2022 to in the District of Maine and elsewhere with conspiracy to violate federal firearms laws in violation of 18 U.S.C. §371. (DE #22) The information also contained a forfeiture provision which the government subsequently dismissed. (DE #81-18)

On April 13, 2023, the defendant appeared before United States District Judge John J. Woodcock, Jr. and waived his right to have his case proceed by indictment. (DE #38)(DE #81-16, 17, 18)

Also on April 13, 2022, the defendant entered a guilty plea without the benefit

of a written plea agreement (DE #81-34) to Counts 1 and 2 of the information. The government had previously filed a pleading (DE #S-3072473) entitled "Prosecutions Version of the Offenses" which amounted to a factual proffer which the defendant agreed to and contained all of the essential elements of the offenses. (DE #81-30, 31) The district court accepted the defendant's guilty plea, adjudicated the defendant guilty and set sentencing in the matter. (DE #81-35, 36)

After the court's probation office prepared a Presentence Investigation Report (hereinafter "PSR")(DE #44), both the government and defense filed objections to that report. (DE #50, 52) As outlined in the addendum to the PSR (DE #53 at 46-51) the government's objection was limited to an additional basis for the obstruction of justice enhancement as outlined in ¶43 of the PSR. The defendant, file numerous factual and legal objections including an objection to the obstruction of justice enhancement. The defendant also objected to the probation office's suggestion that the sentences for each count run consecutive to each other. (PSR at ¶99) Based on the sentence ultimately imposed, this latter issue ended up being a non-factor.

After a presentence conference with the parties was held (DE #56, 78), counsel for the defendant notified the court that there would be no evidentiary hearing necessary and requested until October 27, 2022 for the parties to file their respective sentencing memorandums. (DE #57)

In the government's sentencing memorandum (DE #59) they notified the court of three matters. The first was that an evidentiary hearing at sentencing was unnecessary in that all factual disputes had been resolved. In their second matter, the

government once again stood by their belief that the defendant's offense level should be increased by two levels for obstruction of justice pursuant to §3C1.1 of the guidelines.  The final matter addressed by the government was that even though the defendant's guidelines were 151-188 months (PSR at ¶99), the government agreed to recommend concurrent sentences as to the two counts of conviction.

In the defendant's sentencing memorandum, the defendant concurred that there was no need for an evidentiary hearing.  The defendant continued to object to the obstruction of justice enhancement while advocating also for the imposition of a concurrent sentence as to each count.    In addition to the memorandum, the defendant attached a psychological evaluation that was performed by Geoffrey L. Thorpe, a licensed psychologist.  The report of Dr. Thorpe found that the defendant had untreated mental disorders including PTSD and a significant disassociative disorder from being raised as a Somali refugee in a refugee camp in Kenya.  He also found the defendant to be in need of substance abuse treatment.  (DE #60-1)

Citing to their argument in their sentencing memorandum (DE #59), the government, sought a two level increase in th guideline range applicable to the defendant for obstruction of justice. (DE #82-22) After hearing from the defense (DE #82-25), the court found that "the government ha(d) established obstruction of justice as more likely than not" and applied the two level enhancement.  (DE #82-29, 30)

After reducing the offense level by three for the defendant's timely acceptance of responsibility, the court found that the total offense level was now 32.  After finding the defendant had a Criminal History Category of III, the court found that the

defendant's advisory guideline range was 151-180 months[1]. (DE #82-32)

Before giving counsel the opportunity to argue as to the appropriate sentence and prior to hearing from Mr. Issak, the court announced that it was going to grant a variance. The basis of the variance was a one level criminal history category reduction based on Amendment 821 to the guidelines which had eliminated "status points[2]." After granting that variance, the court found that the total offense level remained at 32, however, the defendant now had a Criminal History Category of II, the court found that the defendant's advisory guideline range was 135-168 months. (DE #82-34)

After hearing from the parties and affording the defendant the opportunity to allocute (DE #82-47), the court then took into consideration the factors under 18 U.S.C. §3553(a). The sentencing court went into great detail to describe the facts and circumstances of the defendant's upbringing in refugee camps and difficult life. The court then went into great detail describing how the defendant conducted these firearms transactions, including the guns for drugs aspect, the fact that the guns were shipped out of state and the number of firearms involved (75) into his calculus. (DE #82-60, 61) The sentencing court found the number of guns involved in this case to be "astonishing." (DE #82-60)

The sentencing court finally took into account the recommended sentence of the government of 120 months. In imposing its sentence the court stated:

---

[1] The actual guideline range should have been 151-188 months however the combined statutory maximum for the two counts of conviction was 180 months.

[2] The defendant, who was on probation at the time of the commission of the offense, had been assessed two additional criminal history points for that status. (PSR at ¶57)

...frankly, if the government had not recommended 120 months, I would have imposed a sentence of 168. But because the government recommended 120, I figure my job is not to be more stringent and harsh than the government itself, so I am going to impose a sentence of 120 months. You should be very grateful. (DE #82-64)

The Court found that the defendant should be sentenced to a total term of incarceration of 120 months as to the counts of conviction[3], which the government's recommended and was well below the low end of the advisory guideline range found by the court, among other things. (DE #82-64)(DE #65) A timely notice of appeal was filed on the defendant's behalf on December 6, 2023. (DE #73)

The Defendant/Appellant ABDULLAHI ISSAK is presently incarcerated at FCI - Berlin in Berlin, New Hampshire.

---

[3]The sentenced consisted of a term of incarceration of 120 months as to Count 1 of the information with a concurrent sentence of 31 months as to Count 2 of the information. (DE #65)

STATEMENT OF THE FACTS[4]

On about August 26, 2019, in *New York v. Abdullahi Issack*[5], Docket No.

CO-2018- 001480, Defendant was convicted following his plea of guilty to the felony

offense of Criminal Possession of Stolen Property in the Fourth Degree in violation

of New York Penal Law 165.45(2). Criminal Possession of Stolen Property in the

Fourth Degree.  This is a class E felony in New York punishable by a term of

imprisonment of up to four years. At all times relevant to this action, the defendant

knew that he was a felon who was prohibited from possessing firearms.

Beginning on about December 20, 2021, the defendant joined in a conspiracy

with one or more other conspirators ("straw purchasers") to straw purchase firearms

for him at Maine businesses holding federal firearms licenses ("FFLs"). The FFLs

were licensed under the provisions of Chapter 44 of Title 18, United States Code, and

required by those provisions to keep information concerning firearms purchases in

their records. FFLs must verify the identity of potential customers by examining a

government-issued identification document, such as a driver's license, and also must

have the purchaser complete a Department of Justice, Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF") Form 4473, Firearms Transaction Record ("Form

4473"). In Forms 4473, purchasers of firearms must certify that they are the actual

transferee/buyer of the firearms. FFLs also must verify that potential customers are not

---

[4]The statement of the facts has been obtained from the factual proffer contained within government's version of the offense (DE #S-3073473) that the defendant agreed to during his change of plea which contained all of the essential elements of the offense. (DE #81-30, 31)

[5]Though the spelling of the defendant's last name in the New York case is different, the court confirmed that the defendant there was indeed the same defendant in the instant case.

prohibited from possessing firearms. Purchasers must themselves had to certify that they have not previously been convicted of a crime for which a judge could have imposed more than one year of prison.

Mr. Issak caused and entered into an understanding and agreement with numerous straw purchasers for them to make false statements and representations in Forms 4473 that FFLs were required to keep in connection with the sale of firearms. The Defendant directed the straw purchasers where to make their purchases, what firearms to purchase, and provided them money to make the purchases. The straw purchasers then falsely executed and certified as true, correct, and complete in Section B, Box 21.a, of each Form 4473 that they were the actual transferees/buyers of the firearm or firearms listed on the forms, when, in fact, the Defendant was the actual transferee and buyer. In multiple instances, drug customers turned into firearm straw purchasers for the drug dealers in exchange for money and/or drugs.  (PSI at ¶4)

The defendant was a drug dealer who turned some of his customers into firearm straw purchasers at businesses holding federal firearm licenses (FFLs). He recruited individuals to straw purchase guns for him, directed the straw purchasers which firearms to purchase, and sometimes would direct the straw purchasers to make calls to FFLs to determine inventory.  Issak provided the money to purchase the firearms and determined when and where the firearms would be purchased. The firearms were turned over to him in short order after the purchase, and he orchestrated the purchases/sales/people.  (PSI at ¶5)

The Defendant compensated the straw purchasers with United States Currency,

–8–

controlled substances, forgiveness of debts, or a combination thereof, for engaging in the illegal transactions. The prosecution's version of the offense then laundry listed 36 separate firearm transactions that occurred in the District of Maine where the defendant was the actual buyer of the firearms. (DE #S-3072473 at pages 3-5) The PSR, utilizing the discovery provided by the government, documented a total of 77 transactions that they considered to be relevant conduct. (PSR at ¶6, 7)

## SUMMARY OF THE ARGUMENT

Did the court err at sentencing? Undersigned counsel's review of the record herein indicates the Appellant received the full and complete benefit of his guilty plea as to Counts 1 and 2 of the information that he pled guilty to. Because the defendant received a sentence fifteen months *below* the variant guideline range, the sentence of the two counts was imposed concurrently, he was given two separate variances, and sentenced at the government's recommended sentence, the sentence imposed was clearly reasonable. Therefore, no error was committed.

<u>STATEMENT OF THE ISSUE</u>[6]

I.

WHERE THE DEFENDANT RECEIVED A SENTENCE BELOW THE
ADVISORY GUIDELINE RANGE INCLUDING TWO SEPARATE
VARIANCES GRANTED BY THE SENTENCING COURT, THERE
WAS NO APPEALABLE ERROR COMMITTED AND THE
SENTENCE IMPOSED WAS REASONABLE.

---

[6]Undersigned counsel has reviewed the record on appeal herein and it is his considered judgment that there are no issues of merit in this appeal.

## ARGUMENT

### I.

WHERE THE DEFENDANT RECEIVED A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE INCLUDING TWO SEPARATE VARIANCES GRANTED BY THE SENTENCING COURT, THERE WAS NO APPEALABLE ERROR COMMITTED AND THE SENTENCE IMPOSED WAS REASONABLE.

In order to justify the filing of an *Anders* brief in the instant case, both procedural and substantive reasonableness were thoroughly examined.

### *Procedural Reasonableness*

The lone issue of procedural reasonableness that was an issue at sentencing was whether the probation officer in paragraph 32 of the PSR sought an increase for obstruction of justice pursuant to §3C1.1 of the guidelines. The relevant portion of the PSR stated as follows:

> "The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when the defendant told CS-6 not to speak to ATF under any circumstances and under circumstances in which CS-6 perceived the statement to be a threat. Said interaction occurred after Issak knew he was being investigated by ATF in relation to the instant offense. Further, he directed someone to destroy evidence, to wit, his phone records. USSG §3C1.1, comment. (n.4(A))."

Prior to sentencing the defendant filed a sentencing memorandum. (DE #61) In that memorandum, the allegations of confidential source #6 were not denied but outlined that the conversation was vague and a threat could not be implied even though that is the way it was perceived by CS-6.

Regarding the jail calls, the Defendant's sentencing memorandum stated "Mr. Issak is not contesting the facts set forth in the PSR but suggests that the primary purpose of those jail phone calls (albeit inadvisable on multiple levels) was to continue with the criminal conspiracy set forth in the Information." In addition, counsel pointed out that many of the calls were made before the defendant's federal charges were filed.

At sentencing, the government argued that many of the jail calls were made *after* the defendant was aware of the pendency of the federal charges. (DE #82-24, 25) These calls included Mr. Issak directing cell phones to be switched, social media accounts to be destroyed, and a new TextNow account to be used as well as other evidence as to the materiality of the obstructive conduct. (DE #82-25) The defense countered that the conduct did occur but it was *de minimus* and therefore did not amount to obstructive conduct. (DE #82-25, 26)

In its ruling the sentencing court found, that the defendant directed the destruction of evidence including calls logs. In addition, the court reviewed numerous jail calls made both before and after the defendant's arrests on federal charges and found that the government had made a "strong case" for obstruction of justice as that term is defined under §3C1.1 (DE #82-28)

On the issue of materiality the court found that "(i)t's obvious that a person's cell phone, log history, and social media information would be of significant interest to law enforcement in the context of this investigation. And it strikes me that if the information was not material to the investigation, then it would be peculiar that the

defendant was directing his girlfriend to delete it along with other information." Therefore the court ruled that the government had more than established the obstruction.  (DE #82-29, 30)

This court's first task is to "ensure that the district court did not commit any 'significant procedural error' to arrive at a sentence." *United States v. Flores-Quiñones*, 985 F.3d 128, 134 (1st Cir. 2021) As relevant here, a "significant procedural error" includes "selecting a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586 (2007).

In sentencing appeals, appellate review is bifurcated. See *United States v. Clogston*, 662 F.3d 588, 590 (1st Cir.2011).  This court should first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable.  *Id*.; see *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586 (2007). When mulling the procedural reasonableness of a sentence, this court should afford *de novo* review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's fact-finding for clear error, and evaluate its judgment calls for abuse of discretion. *United States v. Ruiz-Huertas*, 792 F.3d 223 (1st Cir. 2015)

In assessing the procedural reasonableness of a sentence, this court applies a 'multifaceted' abuse of discretion standard in which the court applies clear error review to factual findings, *de novo* review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls. *United States v. Flores-Quiñones*, 985 F.3d 128 (1st Cir. 2021); *United States v. Reyes-Torres*, 979 F.3d 1 (1st

-13-

Cir. 2020)

In assessing procedural reasonableness, the court "must ensure that the district court did not commit any 'significant procedural error' to arrive at a sentence." *United States v. Sayer*, 916 F.3d 32, 37 (1st Cir. 2019)

A sentence is procedurally unreasonable when the district court commits a procedural error such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." *United States v. Díaz-Rivera*, 957 F.3d 20, 25 (1st Cir. 2020) (quoting *United States v. Bermúdez-Meléndez*, 827 F.3d 160, 163 (1st Cir. 2016)).

"[F]actual findings made at sentencing must be supported by a preponderance of the evidence." *United States v. Colón-De Jesús*, 85 F.4th 15, 21 (1st Cir. 2023) (quoting *United States v. Rivera-Ruiz*, 43 F.4th 172, 181 (1st Cir. 2022)). In making these findings, sentencing courts may depend upon any "relevant information regardless of admissibility at trial . . . provided it has 'sufficient indicia of reliability to support its probable accuracy.' " *United States v. Lee*, 892 F.3d 488, 492 n.4 (1st Cir. 2018)(quoting *United States v. Mills*, 710 F.3d 5, 15-16 (1st Cir. 2013)). Thus, a "sentencing court 'may accept any undisputed portion of the [PSR] as a finding of fact[,]' " *United States v. González*, 857 F.3d 46, 62 (1st Cir. 2017) (first alteration in original) (quoting Fed. R. Crim. P. 32(i)(3)(A)), for "generally, a PSR bears sufficient

indicia of reliability." *United States v. Díaz-Rivera*, 957 F.3d 20, 27 (1st Cir. 2020) (quoting *United States v. Rondón-García*, 886 F.3d 14, 25 (1st Cir. 2018)); *see also* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court … may accept any undisputed portion of the presentence report as a finding of fact …"); *Colón-De Jesús*, 85 F.4th at 22 (explaining that "a district court does not err by relying on unobjected-to portions of a PSR at sentencing"); *see also United States v. Ramirez-Ayala*, 2024 WL 2074684 (1st Cir. May 9, 2024)

The only issue that impacts procedural reasonableness is whether the defendant obstructed justice as that term is defined within §3C1.1 of the guidelines. The crux of the unobjected to conduct attributable to the defendant was contained in government's sentencing memorandum (DE #59), the PSR at ¶32, 43, as well as the proffer made by the government during the sentencing hearing[7]. (DE #82 at 23-25)

This unobjected to conduct included that Mr. Issak was arrested on state charges on July 30, 2022 in Maine. On August 1, 2022, a federal criminal complaint on gun charges was obtained in federal court (DE #3) and a detainer was placed upon the defendant. According to the recorded jail calls cited by the government, since Mr. Issak was aware that unable to be released on bond - on an otherwise bondable offense - the defendant was aware of the pending federal charges.

According to the government, in these jails calls, the defendant directed coconspirators to switch cell phones, destroy social media accounts, ride in different vehicles, create new user names, and now communicate via a new TextNow account.

---

[7] It must be noted that no evidentiary hearing was held at both party's request on the issue of obstruction of justice.

The government also alleged that the defendant directed then to get everything away from the case agent.  The government also cited that directing associates to delete accounts, wipe call records, and change their patterns of behavior potentially undercuts law enforcement surveillance. (DE #59, 82-23, 24)    As the issue of wilfulness, repeatedly directing others to move, conceal, and destroy evidence, all while discussing the presence of federal investigators closing in on him, was deliberate action on Defendant's part rather than conduct that was spontaneous or fleeting.  (DE #59-5)

In response, the defendant did not contest the content of the jail calls but alleged that the conduct was to further the conspiracy and not to obstruct justice.  Defense counsel even conceded in his memorandum that "that there is a potentially obstructive effect in those phone calls; however, Mr. Issak's will was to continue his criminal livelihood."  (DE #60-2) Counsel further argued that the defendant's conduct was *de minimus* and therefore did not tend to influence the issue under determination.  (DE #82-25)

The sentencing court, after careful analysis (DE #82 at 26-30), noted that there was   a "strong case" for obstruction of justice "especially since he told Angelica Galarza (the defendant's then girlfriend) to delete the social media content and cell phone for the log history."  (DE #82-28)

Relying on Application Note 4(d) to §3C1.1 of the guidelines, which states that obstructive conduct includes "procuring another to destroy or conceal evidence that is material to an official investigation," noting that the defendant was aware of the

federal investigation at the time of the obstructive conduct, and that the obstructive conduct was material, the court ruled that the standard of obstruction satisfied the requirements of §3C1.1 of the guidelines. (DE #82-29)

The relevant Sentencing Guidelines contain two provisions dealing with obstruction of justice. Section 3C1.1 provides that: "(i)f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

Relevant to this analysis, Application Note 4 provides examples of conduct that can be considered to be obstructive conduct justifying the two level increase. In Application Note 4(d), the guidelines provides that "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so, in addition the conduct must "result() in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." The government must prove the applicability of this enhancement by a preponderance of the evidence. See *United States v. Quirion*, 714 F.3d 77, 79 (1st Cir. 2013).

The first prong was never contested at sentencing. However, the issue of a "material hindrance" was argued by the defense. The sentencing court relied upon this court's decision in *United States v. Nygren*, 933 F.3d 76 (1st Cir. 2019) to justify its

ruling.

The sentencing court stated as to the issue of materiality that "(i)t's obvious that a person's cell phone, log history, and social media information would be of significant interest to law enforcement in the context of this investigation." In addition, the court found that common sense dictated that if it was not material to the investigation, Mr. Issak would not be directing his girlfriend to delete it. (DE #82-29) This clearly established the obstruction of justice by a preponderance of evidence.

### *Substantive Reasonableness*

This court does review a defendant's sentence for reasonableness. *United States vs. Booker*, 125 S. Ct. 738, 765-66 (2005) Reasonableness review requires this court to review the sentence under the abuse of discretion standard. *United States v. Torres-Landrúa*, 783 F.3d 58, 68 (1st Cir. 2015); *Gall vs. United States*, 128 S. Ct. 586, 594 (2007)

"The touchstone of abuse of discretion review in federal sentencing is reasonableness." *United States v. Vargas–Dávila*, 649 F.3d 129, 130 (1st Cir.2011). An inquiry into the substantive reasonableness of a sentence must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Reyes-Torres,* 979 F.3d 1 (1st Cir. 2020); *United States v. Contreras-Delgado*, 913 F.3d 232, 243 (1st Cir. 2019) "The hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" *United States v. Zapata-Vázquez*, 778 F.3d 21, 24 (1st Cir. 2015)

A defendant who protests his within-the-range sentence on this ground "must

adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable." *United States v. Clogston*, 662 F.3d 588, 592 (1st Cir. 2011)  This Court will take into consideration "the totality of the circumstances." *Id*. "In the last analysis, 'the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result.'" *United States v. Santiago Rivera,* 744 F.3d 229, 234 (1st Cir. 2014)

Unlike a within the guideline sentence, it is a rare below-the-range sentence will prove vulnerable to a defendant's claim of substantive unreasonableness. *United States v. King*, 741 F.3d 305 (1st Cir. 2014)   In this case, the sentence of 120 months that was imposed in a concurrent fashion and, ***which was a total of 15 months below the low end of the applicable advisory range***, clearly is a "plausible sentence rationale" and a "defensible result."

This court "rarely find a below-[G]uidelines sentence to be substantively unreasonable." *United States v. Ahmed,* 51 F.4th 12 (1st Cir. 2022); *United States v. Millán-Machuca*, 991 F.3d 7, 32 (1st Cir. 2021).

The sentencing court considered the reasons for the sentence combined with an analysis of the §3553(a) factors. (DE #82-51) Thereafter, the sentencing court engaged in an analysis of the factors outlined in 18 U.S.C. §3553(a) other than the advisory guidelines.  The other factors are (1) the nature and characteristics of the offense and the history and the characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to

provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense. *Id.*; 18 U.S.C. §3553(a)(1)-(3), (6-7).

The primary sentencing mandate of §3553(a) states that a court must impose a minimally sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, and rehabilitation are set forth in the beginning sentence where it states that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

A district court is entitled to start with and accord the Guidelines "substantial weight." See *United States v. Jimenez-Beltre*, 440 F.3d 514, 516 (1st Cir. 2006). A presumption of reasonableness may not attach to a guidelines sentence, but a sentence below the guideline range nonetheless suggests mitigating factors are already at work. Indeed, the district court here weighed each mitigating factor the Defendant cited in support of an even shorter sentence. See *United States v. Griffin*, 187 Fed. Appx. 13 (1st Cir. 2006)

The sentencing court properly analyzed each and every factor beginning with defendant's history and characteristics. (DE #82-51) The sentencing took into account

that the defendant was born in a then war-torn Somalia and grew up in deplorable conditions in a Somali refugee camp in Kenya until the defendant was 7 years of age when he and his family emigrated to the United States.  (DE #82-52, 53) The sentencing court then analyzed the defendant's family life, his education as well as his prior criminal record before turning to the nature and circumstances of the offense. (DE #82-54, 55) The sentencing court also considered the submitted psychological report prepared by Dr. Thorpe.  (DE #82-62)

In that regard, the court found that the defendant was the leader of a guns for drugs conspiracy[8].  The court further found that the defendant recruited the drug addicts, directed them to what firearms to purchase, occasionally telling them what to say when calling firearms dealers, and provided the money for the purchases.  The court further determined that the defendant directed when and where they should be bought. The addicts would go to the firearms dealers in Maine and purchase firearms as directed by the defendant with the money the defendant provided.  (DE #82-55)

The sentencing court further noted that once the addicts made the gun purchases, they would turn the guns immediately over to the defendant. The defendant would then distribute the firearms mostly in Springfield, Massachusetts and Syracuse, New York. During most of the conspiracy, the defendant was himself prohibited from purchasing a firearm, possessing a firearm due to his own felony conviction on February 18, 2022, in Springfield. (DE #82-56)

After a comprehensive review of the PSR, the sentencing court found that the

---

[8]It should be noted that in light of his agreement with the government and proceeding in this case by information rather than indictment, the defendant did not face any drug charges.

case involved 75 firearms as corrected by the government, purchases or attempted purchases, during this period. The PSR, the sentencing court noted, involved six confidential sources and five unidentified persons who bought, or tried to buy firearms, for the defendant. (DE #82-56) Once the defendant took possession of the firearms, he transported them to Springfield and Syracuse, New York for actual distribution. (DE #82-57)

The sentencing court then went on to analyze the aggravating circumstances that it found including overruling the defendant's objection for the above obstruction of justice. The court first found that the defendant was "involved in the purchase or attempted purchase of 75 firearms, six purchases were attempted but not completed reducing the number of purchases of firearms to 69. Of the 69 firearms, 11 had been recovered meaning that 58 firearms are still out there on the streets, and they are bound to cause all sorts of trouble and heartache." (DE #82-57)

The sentencing court went on the note in its §3553(a) analysis that "I thought of the number of guns here. Here, we're talking 75 guns. That's an astonishing number of guns. I've now been doing this job for about 20 years. I've never seen anything like this. This is the highest number of guns by a factor of probably 10 that I've ever seen involved in a conspiracy." (DE #82-60, 61)

However, the sentencing court's analysis also took into account the mitigating circumstances that were present. While the court found that the government's request of 120 months was reasonable (DE #710-64) the court felt that mitigating adjustments factored into the suggested sentence as well.

The sentencing court further manipulated the sentence in the defendant's favor by utilizing the 2021 version of the guidelines (the version at the time of the offense) and not the current 2023 version of the sentencing guidelines. In doing this, the sentencing court ultimately gave the defendant the benefit of the 2023 guidelines but not its detriment. The court noted at sentencing (DE #82-15) that using the 2023 version of the guidelines would result in a two level increase for the use straw purchasers.

However, since the defendant was on probation at the time of the offense resulting in two additional criminal history category points raising his Criminal History Category from II to III. The sentencing court ordered that the defendant receive a benefit using the 2023 guidelines as that increase had now been eliminated by Amendment 821 of the guidelines and sentencd hi, using a variance baed upon Criminal History Category II. (DE #82-19)(PSR at ¶57, 115A)

The sentencing court additionally decided order to avoid a potential *ex post facto* application of the guidelines was to use the 2021 guidelines BUT to give the defendant the benefit of the 2023 "status points" amendment by informing the parties prior to the imposition of sentence, that he was going to utilize Criminal History Category II and not III but as a variance and not an actual guideline determination. (DE #82-19)

The sentence ultimately imposed was below the otherwise applicable advisory guideline range and amounted to two separate variances which both lowered the otherwise applicable guideline range and was at the government's recommend

sentence of 120 months.   Finally the sentencing court also had the discretion to impose the sentences as to Counts 1 and 2 consecutively in order to achieve a within the guideline range sentence.  See U. S. S. G. §5G1.2(d) The sentencing court declined to do so and imposed concurrent sentences as to the two counts.  (DE #65-2, DE #82-64)

The assessment of the 18 U.S.C. §3353(a) factors, a downward variance based on the "status points" assessed to the defendant, imposing a concurrent versus a consecutive sentence and combined with a sentence that was below the low end of the applicable guideline range made the sentence imposed substantively reasonable.

## <u>CONCLUSION</u>

WHEREFORE, the Defendant/Appellant submits to this Court that the sentence imposed was both procedurally and substantively reasonable, Therefore it is respectfully requested that this Court make findings and conclusions after a review of the entire record on appeal that there were no errors committed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record  this 1st day of June 2024.


Respectfully submitted,

PHILIP R. HOROWITZ, ESQUIRE
Court Appointed Attorney for ISSAK
7700 North Kendall Drive
Suite #604
Miami, Florida 33156
Tel.: (305) 670-1915
E-Mail: *HorowitzDefense@aol.com*


  */s/ Philip R. Horowitz*
By: PHILIP R. HOROWITZ, ESQUIRE
Florida Bar No.: 466557
First Circuit Bar No.: 1190140

## ADDENDUM PURSUANT TO LOCAL RULE 28.0

**1. JUDGMENT AND COMMITMENT ORDER**............................................ **(i)**

**2. NOTICE OF APPEAL**.......................................................................**(ii)**

AO 245B  (Rev.09/19) Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Maine

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| ABDULLAHI ISSAK<br>a/k/a "T" | Case Number: 1:22-cr-00135-JAW<br>USM Number: 15092-510 |
| a/k/a "TONY"<br>a/k/a "TEE" | David W. Bate, Esq.<br>Defendant's Attorney |

U.S. DISTRICT COURT
DISTRICT OF MAINE
RECEIVED & FILED

2023 NOV 29 P 1:41

CLERK

**THE DEFENDANT:**

☒ pleaded guilty to count(s) <u>One and Two of the Information</u>
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☐ was found guilty on count(s) _____ after a plea of not guilty.

**The defendant is adjudicated guilty of these offenses:**

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g), 18 U.S.C. § 924(a)(2) | Felon in Possession of Firearm | December 24, 2021 | One |
| 18 U.S.C. § 371 | Conspiracy to Violate Federal Firearms Laws | July 19, 2022 | Two |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____.
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

November 28, 2023
Date of Imposition of Judgment

_Signature_
Signature of Judge

John A. Woodcock, Jr.,  U.S. District Judge
Name and Title of Judge

November 29, 2023
Date Signed

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 2 – Imprisonment

Judgment—Page   2   of   7

DEFENDANT:            ABDULLAHI ISSAK
CASE NUMBER:         1:22-cr-00135-JAW

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of <u>120 months on Count 1 and 31 months on Count 2, to be served concurrently.</u>

☒ The court makes the following recommendations to the Bureau of Prisons:
The defendant for enrollment in the 500 hour Comprehensive Drug Treatment Program.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:
☐        at _____ ☐ a.m. ☐ p.m. on _____.
☐        as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
☐        before 2 p.m. on _____.
☐        as notified by the United States Marshal.
☐        as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____
_____
_____

_____

Defendant delivered on _____ to _____

_____ ,  with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 3 – Supervised Release

Judgment—Page    3    of    7

DEFENDANT:          ABDULLAHI ISSAK
CASE NUMBER:      1:22-cr-00135-JAW

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: <u>3 years on Count 1 and 3 years on Count 2, to be served concurrently.</u>

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two additional drug tests during the term of supervision, but not more than 120 drug tests per year thereafter, as directed by the probation officer.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments of this judgment.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page    4    of    7

DEFENDANT:          ABDULLAHI ISSAK
CASE NUMBER:     1:22-cr-00135-JAW

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____ Date _____

Entry ID: 6649208     Date Filed: 06/15/2024     Page: 37     Document: 00118156881     Case: 23-2048

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 3D – Supervised Release

Judgment—Page    5    of    7

DEFENDANT:           ABDULLAHI ISSAK
CASE NUMBER:         1:22-cr-00135-JAW

## SPECIAL CONDITIONS OF SUPERVISION

1) Defendant shall not use or possess any controlled substance, alcohol or other intoxicant; and shall participate in a program of drug and alcohol abuse therapy to the supervising officer's satisfaction. This shall include testing to determine if Defendant has used drugs or intoxicants. Defendant shall pay/co-pay for services during such treatment to the supervising officer's satisfaction. Defendant shall not obstruct or tamper, or try to obstruct or tamper, in any way, with any tests;

2) Defendant shall not associate with individuals consuming alcoholic beverages, shall not frequent business establishments whose primary product is alcoholic beverages, and shall not use any medication containing alcohol without permission from the supervising officer or a prescription from a licensed physician;

3) Defendant shall not own or possess any firearm or other dangerous weapon, or knowingly be at any time in the company of anyone known by the defendant to possess a firearm or other dangerous weapon; and

4) A United States probation officer may conduct a search of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched. Searches must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation of release.

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
     Sheet 5 – Criminal Monetary Penalties

Judgment—Page   6   of   7

DEFENDANT:       ABDULLAHI ISSAK
CASE NUMBER:    1:22-cr-00135-JAW

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| Count | Assessment | Restitution | Fine | AVAA Assessment * | JVTA Assessment ** |
|---|---|---|---|---|---|
| One | $ 100.00 | $ 0 | $ 0 | $ | $ |
| Two | $ 100.00 | $ 0 | $ 0 | $ | $ |
| **Totals:** | $200.00 | $0.00 | $0.00 | | |

☐ The determination of restitution is deferred until      . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **TOTALS** | $ | $ | |

☐ Restitution amount ordered pursuant to plea agreement  $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Judgment—Page   7   of   7

DEFENDANT:       ABDULLAHI ISSAK
CASE NUMBER:    1:22-cr-00135-JAW

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**   ☒   Lump sum payment of $200.00 due immediately, balance due
☒   Any amount that the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from incarceration, any remaining balance shall be paid in monthly installments, to be initially determined in amount by the supervising officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on request, by either the defendant or the government.
☐   not later than                                      , or
☐   in accordance with   ☐   C,   ☐   D,   ☐   E, or ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐   C,   ☐   D, or   ☐   F below); or

**C**   ☐   Payment in equal                *(e.g., weekly, monthly, quarterly)* installments of $          over a period of
*(e.g., months or years),* to commence            *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐   Payment in equal                *(e.g., weekly, monthly, quarterly)* installments of $          over a period of
*(e.g., months or years),* to commence            *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within          *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

Case Number
Defendant and Co-Defendant Names            Joint and Several          Corresponding Payee,
*(including defendant number)*        Total Amount          Amount             if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Entry ID: 6649208     Date Filed: 06/15/2024     Page: 40     Document: 00118156881     Case: 23-2048

### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00135-JAW |
| | ) | |
| ABDULLAHI ISSAK, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>NOTICE OF APPEAL</u>

NOW COMES Defendant, Abdullahi Issak, by and through counsel, David W. Bate, and gives notice of his intent to appeal his sentence, entered on 11/29/23, <u>see</u> Judgment (Dkt #65), to the United States Court of Appeals for the First Circuit.

Dated in Bangor, Maine this 6th day of December, 2023.

<u>/s/David W. Bate</u>
Attorney for Defendant
Fed. Bar No. 2096
15 Columbia Street, Suite 301
Bangor, Maine 04401
(207) 945-3233
davidbatelaw@gmail.com

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the above date, I electronically filed this
pleading with the Clerk of Court using the CM/ECF system which will
send notification of such filing(s) to the following:

    AUSA Andrew Lizotte, Esq.

                       /s/David W. Bate
                       Attorney for Plaintiff
                       Fed. Bar No. 2096
                       15 Columbia Street, Suite 301
                       Bangor, Maine 04401
                       (207) 945-3233
                       davidbatelaw@gmail.com